Good morning. May it please the court and counsel, my name is Michael Rotker and I'm an appellate attorney with the Department of Justice here on behalf of the appellant, United States of America. I'd like to reserve a minute and a half for rebuttal. Your honors, this interlocutory appeal challenges the district court's order suppressing evidence that was obtained during a consent search of the defendant's vehicle. All parties agree that the vehicle had been validly stopped for speeding. The district court concluded that the officer's request for consent to search had impermissibly prolonged the stop in violation of this court's decision in Chavez Valenzuela. That ruling should be reversed. Far from prolonging the stop, the officer here sought and obtained consent only after the stop had ended at a time when the encounter had become consensual. Now, no one disputes the proposition that a police officer cannot prolong or extend a traffic stop that has already ended, and that's precisely the situation that's presented here. The officer detained the vehicle for speeding. He approached the driver, obtained his documentation, and promptly returned to his patrol car. He contacted dispatch and moments later was informed that the driver's documentation was valid. At that point, the officer turned off his overhead flashing lights and proceeded to issue a citation. He then returned to the patrol car on the passenger side because the car had been pulled over to the shoulder of the highway. He reached in, he handed the driver his documentation, he handed the driver the citation, he explained the procedures for paying the citation, and he then answered the defendant's own questions to clarify those procedures. It's only after this sequence of events that the officer broached the topic of consent. Now, as we explained in our brief, and defendant doesn't dispute, several courts of appeals have repeatedly recognized on facts that are materially indistinguishable from those at issue here, that once an officer returns the driver's documentation and completes the purpose of the stop, the business of the stop, either by issuing a citation or a warning or at least telling the driver that none will be forthcoming, then the officer has, by his actions, communicated the message to a reasonable motorist that they are now free to go, that the stop has ended. Leaving aside whether that's true in general and leaving aside our own case law, I watched the tape, okay? I'm glad. It seemed to me that had the, Mr. Palacios tried to drive away at that point, he would have run over the policeman. I mean, he was standing there close enough to the car that nobody would have left at that point. By running over, I mean, he was certainly standing at the stop. I mean, he was very, very close to the car. I don't know if he was touching it, but he was close enough to the car that no ordinary person with a person that close to the car would drive off. Do you disagree with that? I do, Your Honor. I think, again, the question of whether a reasonable person in the defendant's position would have felt free to go, we have to look at all the facts and circumstances. And here, yes, the officer was standing at the side of the patrol car, but, you know. No, not the patrol car. I'm sorry, at the side of the defendant's car. That's correct. And he was leaning in, wasn't he, into the window? Well, Your Honor, we've argued in our brief. I take issue with respect to the district court's finding in that regard. I don't believe that he was leaning in in the sense of trying to prevent the defendant from leaving, which is what the district court found. But that's the point of the matter. The fact is that he was positioning himself in such a personal way that if he wanted to communicate that the stop was over, he certainly didn't do a very good job of doing that because if the person had left, he would have been taking the risk of hurting the guy. I don't – I respectfully disagree, Your Honor. He was standing at the side of the vehicle. I don't believe he violated the spatial integrity of the car, except when he reached in, reached across the car to hand the driver his documentation. But he certainly wasn't standing in front of the car. He was standing to the side. He was standing to the side close enough that if any normal person – if I were standing there, nobody would drive off, it seemed to me. Well, again, I think we have to look at all the facts and circumstances. And where the officer was positioned is certainly one fact, but I don't think – and this is the problem that we have with what the district court did here is it singled out that one fact and said that's essentially dispositive. But it's a pretty good fact, the fact that the person has put himself in such a position that if you left, that it would not in any ordinary sense be likely that you would drive off as some indication that the non-consensual point is not over because he didn't create a space in which the person could have driven off. With all due respect, Your Honor, I think he could have. I mean, what we're dealing with here is one officer. We're not dealing with multiple officers that surrounded the car. What we're dealing with is an officer that spoke in a polite, respectful tone of voice. He didn't make physical contact with the defendant. He didn't brandish his weapon. He didn't display his badge. He didn't use any other official insignia or emblem of his authority to try to communicate that the defendant wasn't free to go. The defendant made no attempt to go. And, in fact, the officer said – He made no attempt to go because if he had made an attempt to go, he was – Well, we don't know. I mean, but that's where the reasonable person standard comes in. We have to think of what a reasonable motorist who's got all his documentation, where the purpose of the stop has now been completed, where his questions have been answered. If he had wanted to go, there's simply – I suggest to you that if he had tried to leave, the officer would not have stopped him because he wasn't trying to further detain him. And a reasonable – Well, that's – that's what I'm trying to argue, Your Honor, is that our – Well, again, two points to make. First is, again, we don't believe, and I don't think – and I think the tape supports our position, that the officer was leaning in in such a way as to suggest that he wasn't free to go. Yes, he was standing by the side of the car, but a police officer has a right to stand at the side of the vehicle. I mean, no one says that he has to stand, you know, a certain distance away. He has made – this is what's different about this. He has made a non-consensual stop. He has told the person, which we all agree, right? He had to stay there. He could not have left. There has to be some cutoff of that. That's right. In terms of what a reasonable person would think. Exactly. And essentially, your argument is that there are a bunch of signals. You don't have to – that you can refrain from telling him, and you can rely on some self-defined signals as to when that ends. Well, and that's what the standard is. I mean, what a reasonable person would understand by words or conduct. We know that he doesn't have to tell him explicitly that he's free to go from Robinette, and the Supreme Court made that very clear. So the question then becomes, in light of all the other circumstances, what would a reasonable motorist have felt? And again, I would refer the Court to the decisions of the Fourth, Eighth, and Tenth Circuits, where they have confronted these identical fact patterns. And what they have said – So we know that it was identical in the part that I'm focusing on. Where was the policeman standing at the time? I clarify that. You're right, Your Honor. There's no discussion in any of those cases about the positioning of the officer. But in each of the cases, it turns on the facts. And there were other facts in those cases that the defendant had argued show that they weren't. Well, they all talk about de-escalating from a seizure to a – Correct. Consensual transaction. And that's really not what our problem is. We have the Chavez-Consuelos case. Yes. Now, can you help me distinguish this case from our own Chavez case? I will, Your Honor. We would have to go and bank if we don't. Can't distinguish. I understand. Let me suggest to you that there is a critical factual distinction that I think is dispositive between this case and Chavez-Valenzuela, and that is the following. The standard that we have articulated that has been adopted by the other circuits is that once the officer has returned the documentation and completed the business of the stop, the defendant is presumptively free to go. In Chavez-Valenzuela, the officer had not – he requested consent before the business of the stop had been completed. He never issued the defendant a citation. In fact, what happened in that case was that the officer decided very early on that he wasn't going to issue a warning. But the critical fact is he never told that to the defendant. And the defendant was standing outside his vehicle. He had not been issued a citation. I think a reasonable motorist in that situation would not have felt free to go. And how does this person know that this stop is over? He knows he got the ticket, but how does he know the policeman doesn't want something else when he's standing there right next to the car and looking like he's not done? Because I think in light of all the facts and circumstances in this record, there's at least a strong presumption, given the fact that he had his documentation back and that he certainly knew the stop was over, he had received the citation. And that's the factual distinction that I would advance – that I would suggest distinguishes this case very clearly from Chavez-Valenzuela. And that's why we've argued for a narrower reading of Chavez than what the district court – But how is he supposed to read the mind of the policeman and know that this is all the policeman wants? He doesn't want anything else. Well, he – you can take him at his word, Your Honor. He testified to that effect in the district court proceedings. Said what? He testified that at the time after he finished answering the defendant's questions, if the defendant had rolled up his window and sought to leave, the officer would not have stopped him. I'm asking the defendant. How does the defendant – when someone comes in and forcibly – or not forcibly, but stops you non-consensually and you know that you can't leave, right? To a point. And the person is still standing there and still standing very close to the car. Yes, he knows that he stopped him originally for speeding and he gave him back his material. But how does the person know that the policeman is finished with him? How does he know that? Well, I don't think that – with all due respect, I don't think the defendant's actual knowledge. It's not a subjective standard. It's what a reasonable person – Well, how would a reasonable person know it? Well, again, there is no bright-line answer. The Supreme Court has said we look at all the facts and circumstances and we try to determine whether a reasonable person would have felt free to go on his way. And for all the reasons I suggested, all the facts in this case point favorably in that direction. I guess to me that had the policeman stepped back from the car and that that would have been a signal. But standing there right next to the car and never having moved from the time that he was still transacting the business to the time that he stopped transacting the business, I don't see how that communicates to a reasonable person that something has changed and he's now free to go. Well, let me just suggest – I'm running out of time here – but the point I'd like to leave you with is that one of the reasons the officer was positioned where he was is because the defendant himself re-initiated the questioning. It was the defendant himself – I'm out of time – but it was the defendant himself who asked the questions and I think put the officer in a position to be there to answer those questions. What is our standard of review of the decision of the district court for the pre-arguments? Your Honor, the standard of review is de novo. It always has been in this circuit. The single case that's been relied upon by the defense, the RAS Villanueva decision, in fact actually says that the standard of review is de novo. It does go on to comment that the finding that it wasn't a seizure was not clearly erroneous, but it correctly articulates the legal standard as being de novo and we suggest that's what this Court has always held and what the Supreme Court has always said. But not as to the kind of fact that Judge Goodwin was referring to? No. Underlying – the question of seizure is a mixed question of law and fact. The underlying historical facts, the positioning, et cetera, those are reviewed for clear error, but the ultimate question of the legal significance is ultimately reviewed de novo.  Thank you very much, Your Honor. Thank you, Your Honor. Thank you very much for your help. Good morning.  Good morning, Your Honor. Ruben Iniguez on behalf of the defendant, Aptely Jose Morales Palacios. Your Honor, what the government is seeking here is exactly what the Supreme Court and this Court have eschewed consistently, is that it's a bright-line rule. The government would have this court rule that the moment at which an officer hands over the documentation, that that is when a traffic stop, every traffic stop, automatically ends, and that simply is not the case. What the case law has us do is look at the totality of the circumstances. That is what Judge Reddin did, and Judge Reddin found that no reasonable motorist under these circumstances would have felt free to terminate the encounter, roll up the window, and drive away. Now, the primary predominant fact here is the fact that the officer remains standing at the side of the passenger window, reaches in, not only to give the gentleman his documentation, but then continues, and I cite, I do cite in my brief the specific point on the videotape. It's at, according to the tape, it shows the minutes, 17-13-07. At that exact point, after he gives the documents back, his right arm goes up on the vehicle, and it stays there throughout the encounter. I actually, I need to look back on it. That wasn't clear to me, but it was clear to me that he was standing very close. He's very close, Your Honor. I think it is difficult to see, but there is a movement of the right arm that goes up there. But, additionally. What is the significance of the stop light being on? The light. I think, Your Honor, as Judge Reddin found it, to the normal, reasonable motorist, that the deactivation of the overhead lights, especially under these circumstances, doesn't mean much because you've still got this high-intensity beam directly focused on the car and the gentleman, which was from the beginning of the stop. So that, again, indicates to him that he's not free to go, that he's still under these very same circumstances during which the stop was initiated. But I think there's, you know, other than the. Well, one thing that occurred to me is that that way he could never end the encounter until he went back to the car and turned off the spotlight. I think, Your Honor, that that is one fact that we should look at. And I think it would have been better, of course, had the officer not only deactivated the overhead lights but also the spotlight. There was no point for the spotlight anymore. But I would say that that's one factor to look at, the fact that that light continued to be focused on him. But I would not suggest that this Court develop a stringent set of rules or factors that have to be obeyed in every situation. That's what we're proposing here is that every situation is malleable and changeable. And we've got a bunch of factors here, not only that spotlight, but we have the fact that, unlike Chauvin's Valenzuela even, we have a stop that had gone on for nine minutes, longer than the stop in Chauvin's Valenzuela, that the officer reaches into the vehicle to return the documentation. He's remained standing at the side of the passenger side of the vehicle at least, bent over and projecting his head and torso into the vehicle as he's asking the questions. But that was at the time that he was dealing with the end of the stop. In other words, it seems to me that the government's position is really that the stop ended after that, when he got his head out of the car, was no longer answering questions having to do with the traffic ticket. Well, Your Honor, I think he certainly – it's definitely not clearly erroneous that he reaches into the vehicle. Well, he did reach into the vehicle, but he reached into the vehicle as part of the transaction around the stop. My understanding of the government's argument is that after that was over and he was no longer leaning into the vehicle is when the stop ended. And as I say, my problem with that is that he still had contact with the car, nearly had contact with the car, but if he had, if he had stepped back, the earlier leaning into the vehicle doesn't seem to me would matter. Right. And, Your Honor, what I'm indicating is that even after he gives back the documentation, the video, if we do look at the video, I think it is difficult to see. It's dusk about this time. But he's bent over, and I think you can see he has a hat on, and the hat and his torso does project in and out of the vehicle, even after the documentation. So I'm referring to leaning into the vehicle after the document is given back. Did we give any reference to the decision of the district court with regard to the actual fact situation when we have the video? Yes, Your Honor. I think this court can consider the video, of course, in determining, in looking at and deciding whether or not the district court clearly erred in its factual determination, but that this court should not review those facts and re-decide those facts on its own. And I would note one of the questions that the court posed to opposing counsel was with respect to the standard of review. Arias Villanueva clearly stands for the proposition that the standard of review is clearly erroneous. The government indicates that or suggests that that rests on a shaky foundation. I would strongly disagree, Your Honor. Erroneous about what? About whether the stop had ended and whether it was what a reasonable person would think, or what? What was Arias Villanueva about? No. What are you saying we are reviewing on a clearly erroneous basis? Exactly. But what? What? I want to know what you're saying we're reviewing. The factual finding that the district court made was that no reasonable motorist would have felt free to leave under these circumstances. Arias Villanueva, Judge Hugg's opinion, in an earlier case, Patino, which Arias Villanueva specifically cites, also stands for that exact same proposition. And the court notes that that finding is subject to a clearly erroneous standard of review. The court in Patino reviewed that decision, and based on the totality of circumstances, found that the district court had not clearly erred in making that factual determination. Footnote 4 in the Patino decision, and elsewhere, I think it's page 726 and 727 of that decision, goes on to indicate that this is a factual determination. Whether or not the reasonable motorist would feel free to leave is the factual determination. That is the finding that was made here. So even if we accept the government's position that it's de novo review for whether a seizure occurred, we're still using a clearly erroneous standard for the underlying factual determinations. And the factual determination is here that no one, no reasonable person under these circumstances will feel free to leave. And the record here, especially the videotape, fully supports that finding. I would respectfully suggest that the government hasn't really suggested, I think, that the district court clearly erred in making that finding. That was its call. That is the job of the district court, and that is the call that the court made. And I would respectfully suggest that, no, the videotape is here for the court to consider those totality of circumstances, but not to reconsider the facts themselves. The only other factors that I would ask the court to consider is that when the officer deals with Mr. Palacios, after he hands back the documentation, I think it's important to note that this is really a seamless interaction. He hands back the documentation, but the first question that he asks about the travel plans are questions that he had already asked. He starts asking about, well, you're coming from California, and you're going to, and he starts saying Yakima, and then he changes to Umatilla, and you're visiting your wife. So he's going back to questions that he had, specific questions that he had already asked during the stop.  And then, oh, now, because he handed me my papers back, now I've gone to something different, when, in fact, the officer comes back to the very same line of questioning that he had used earlier. It's only later that he starts asking, is there anything in the car I should be concerned about? Are there weapons? Are there drugs? Questions that, under Chavez Valenzuela, are clearly wrong. I think the other, the court asked about the distinction with Chavez Valenzuela, and the government suggests that he didn't tell, that the officer in Chavez Valenzuela didn't tell the motorist that he'd be getting a ticket. But what the court specifically rejected there was the fact that when he gave back the documentation, the officer in Chavez Valenzuela did give back the documentation, but right afterward, he asked one question. Not like here, not where he goes back and repeats earlier questions. He asked one question, whether or not there were drugs in the car. And that's what the court found was impermissible. And there, the court was faced with the problem of finding, they had to discuss whether or not there was reasonable suspicion for the officer to think there might be drugs in his car to ask that question. Here, there's no such issue. The government has abandoned any argument with respect to reasonable suspicion. So here, the question is simply, can this officer, when he should have terminated the purpose of this encounter, been able to ask these other questions when, in fact, there was no, and it's, by way of its abandonment of the argument, the government concedes there was no reasonable suspicion to suspect weapons, drugs, anything of the kind. So if we strictly apply Chavez Valenzuela here, this Court has to uphold the district court's finding, I would respectfully suggest. Thank you. Thank you. Mr. Rocker, you have a minute or so. Thank you. Or I will give you a minute or so. Thank you. I appreciate the courtesy. Just two very brief points, Your Honor. I think the parties are basically in agreement on the standard of review question. I think the point of departure is that my opponent suggests that the no reasonable person determination is a factual finding. I don't think that's the case, Your Honor. That's the ultimate legal conclusion, is whether a reasonable person would have felt free to go. And is that all? Because that really is the seizure question. It is. It's the ultimate legal question. And just very briefly, the Supreme Court in several cases that have come from State courts in the Brouwer v. County of Inyo case reviewed the question of whether a seizure had occurred. The no reasonable person, if that had really been a finding of fact, the Supreme Court would not have had authority to review that question. And the only other point I want to make very briefly, Your Honor, this notion about the use of the high intensity beam, we don't dispute that the officer used the beam. The videotape clearly shows it. But as a procedural point, I would just note that the defendant never raised that issue below. The district court had no opportunity to make any fact finding as to the purpose of the beam. And the government strenuously suggests that the purpose of that beam was not coercive. We're talking about a stop on the side of a highway at dusk. And I think that spotlight was really done more for safety reasons than for anything else. But we've never had a chance to make a record on that because this is really an afterthought that was raised for the first time on appeal. So I don't think it changes the analysis. But just as a matter of procedure, I'm not sure that it's, you know, we take issue that it was used for some coercive means rather than for a legitimate safety purpose. Kagan. It's really not terribly relevant. I mean, the question is how was it likely to be perceived. I mean, you know that. Well, I don't think it's relevant. I don't think it changes the analysis. But I just want to respond to my opponent's argument. If the Court has no further questions, we would ask that the suppression order be reversed. Thank you, Your Honors. Thanks to both of you for helpful arguments. The case of United States v. Palacio is submitted.
judges: Goodwin, Hug, Berzon